IN THE UNITED STATE DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DAWN MYERS,

    Plaintiff,

vs.

JAMES DEAN, et. al.

    Defendants.

Case No. 2:04 CV 00654
Judge Edmund A. Sargus, Jr.
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter is before the Court for consideration of the Motion for Summary Judgment filed by Defendants, James Dean and the Pickaway County Board of Commissioners. For the reasons that follow, the Court grants the Motion with respect to the Plaintiff's claims under 42 U.S.C. § 1983 for alleged of violations of her First and Fourteenth Amendment rights and dismisses, without prejudice, all remaining state law claims in Plaintiff's Complaint.

### I.

This matter arises as a result of the termination of employment of Plaintiff, Dawn Myers, on March 3, 2004. During her employment, Myers served as a deputy clerk in the office of Clerk of Courts for Pickaway County, Ohio. Myers began her employment in the Clerk of Courts' office on January 22, 1985. (Myers's Depo. at 10.) As a deputy clerk, Myers was an unclassified civil servant and signed a sworn statement acknowledging that she was an unclassified employee. (Myers Exhibit 2.) According to the Pickaway County Personnel Policy and Procedure Manual, an unclassified employee serves "at the will of the Appointing Authority." (Dean Exhibit A.)

Further, the Ohio Revised Code clarifies that a deputy clerk is an unclassified employee. *See* Ohio Rev. Code § 124.11(A)(10)(defining unclassified service as being comprised of, *inter alia*, "deputies of clerks of the courts of common pleas who supervise, or who handle public moneys or secured documents"); *see also* Ohio Rev. Code § 3.06(A)("A deputy or clerk, appointed in pursuance of law, holds the appointment only during the pleasure of the officer appointing him [or her].")

In September, 2003, the incumbent Clerk of Courts resigned and, under Ohio Revise Code § 305.02(F), the County Commissioners were charged with appointing an interim clerk. Thereafter, the Central Committee of the political party on whose ballot the resigned Clerk had run had the authority to select the replacement official. Ohio Rev. Code § 305.02(B). Defendant, James Dean, ultimately received the appointment as Clerk of Courts. After seeking but failing to receive the interim appointment, Myers filed a petition with the Pickaway County Board of Elections and ran against for the position of Clerk of Courts in the March 2004 Republican Primary. (Myers's Depo. at 35-36.) At that time, Myers had been a deputy clerk for approximately eighteen years and had worked for at least three different clerks. Prior to his appointment, Dean had no previous experience working in the Clerk of Courts office. (Dean's Depo. at 7-10.)

During her campaign, Myers emphasized her experience. Some of her campaign signs read, "Vote for experience," and she encouraged people who attended her campaign meetings to vote for her, because she had worked in the clerk of courts office for over eighteen years. She did not publicly criticize Dean's lack of experience and did not discuss her campaign among her colleagues in the Clerk of Courts office. (Myers's Depo. at 56-57.) Dean, however, won the

primary election on March 2, 2004 by some 500 votes.

On the day after the primary election, March 3, 2004, Dean terminated Myers's position as a deputy clerk. As for his explanation for Myers' termination, Dean called her into his office and told her he could not work with her anymore. (Dean's Depo. at 67; Myers's Depo at 63.) After consulting with her attorney, Myers returned the next day, told Dean she was not resigning, and demanded a reason for the termination of her employment. Dean never memorialized or otherwise provided a written reason for her termination. (Myers's Depo. at 65-66.) In his deposition, Dean testified that he provided a reason for terminating Myers's employment when he told her, on March 3, 2004, that he could not work with her anymore. (Dean's Depo. at 67.) Dean averred, however, that part of the reason he terminated her employment was because she ran against him and because he was concerned that she might run against him again in the future. (Dean's Depo. at 72.)

The parties do not dispute that Dean did not follow the disciplinary procedure outlined in Sections 6.4 - 6.6 of the Pickaway County Personnel Policy and Procedure Manual. (Dean Exhibit A at §§ 6.4 - 6.6.) Despite these guidelines, the first section of the manual is a disclaimer, which states, "[t]his manual is not an employment contract, expressed or implied. . . . To the extent the Employer is not prohibited from doing so by law, the Employer retains the right to hire, discharge, set compensation, and manage unclassified employees without restriction[.]" (*Id.* at § 1.1.)

Plaintiff Myers brings her federal claims against Defendants, James Dean and the Pickaway County Board of Commissioners, under 42 U.S.C. § 1983. She claims that her employment was terminated in violation of her rights under the First and Fourteenth

Amendments of the United States Constitution. Similarly, she claims that her rights have been violated under Article 1, Sections 11 and 16 of the Ohio Constitution. Myers also claims that she was wrongfully discharged in light of the policies outlined by the Pickaway County Personnel Policy and Procedure Manual. (Compl. at 1-5.)

## II.

Defendants have moved for summary judgment on all claims brought by Plaintiff. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhardt v. Pickrel, Scaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 547, 586 (1986); *accord Moore v. Phillip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (stating that

the court must draw all reasonable inferences in favor of the nonmoving party and must refrain from making credibility determinations or weighing evidence). In responding to a motion for summary judgment, however, the nonmoving party "may not rest upon its mere allegations . . . but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). Furthermore, the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party. *Anderson*, 477 U.S. at 251; *see Matsushita*, 475 U.S. at 587-88 (finding reliance upon mere allegations, conjecture, or implausible inferences to be insufficient to survive summary judgment).

### III.

Plaintiff brings this action under 42 U.S.C. § 1983 alleging violations of her First and Fourteenth Amendment rights, as well as violations of the Constitution of the State of Ohio and a state law claim for wrongful discharge. The Court will first address the federal claims brought under Section 1983.

Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983. Section 1983 itself creates no substantive rights, but merely provides a mechanism for aggrieved persons to obtain a remedy for deprivations of rights established

elsewhere. *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985). Section 1983 has two basic requirements: (1) state action that (2) deprived an individual of federal statutory or constitutional rights. *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998); *United of Omaha Life Ins. Co. v. Solomon*, 960 F.2d 31, 33 (6th Cir. 1992); *Barrett v. Steubenville City Sch.*, 388 F.3d 967, 971 (6th Cir. 2004).

A.  **First Amendment Claim**

Plaintiff claims that defendant Dean deprived her of her First Amendment rights by terminating her position as deputy clerk. In support of her claim, Plaintiff equates candidacy for office with the freedom of speech protected by the First Amendment. The issue presented is whether the right of an unclassified employee to run against her supervisor without fear of losing employment is encompassed by any of these enumerated rights and liberties.

Defendants contend that the decision of the Court of Appeals for the Sixth Circuit in *Carver v. Dennis*, 104 F.3d 847 (6th Cir. 1997), has answered this precise question and holds that the Plaintiff has no protected right to run against her employer. In *Carver,* a deputy clerk announced her decision to run against the incumbent clerk for the position of Clerk of Courts for Jackson County, Tennessee. *Id.* at 848. On the day after the deputy clerk announced her candidacy, the incumbent clerk terminated the deputy clerk's position. *Id.* According to the Court of Appeals, the question was whether "a deputy clerk who was an at-will employee . . . had a First Amendment right to run against the incumbent clerk in the next election and still retain her job." *Id.* at 849. The Court of Appeals found that the Supreme Court has "never recognized a fundamental right to express one's political views through candidacy." *Id.* at 851. Furthermore, the court held "that no reading of the First Amendment required Dennis [the incumbent clerk] to

retain Carver [the deputy clerk] after Carver announced her intention to run against Dennis for Dennis's office." *Id.* at 853. "To hold otherwise . . . would be to read out of the entire line of relevant Supreme Court precedent the factual requirements of political belief, expression and affiliation, partisan political activity, or expression of opinion, and to read into that precedent a fundamental right to candidacy." *Id.* at 853.

Plaintiff relies on *McCloud v. Testa*, 97 F.3d 1536 (6th Cir. 1996), as authority for her First Amendment claim. *Testa*, however, is inapposite because it established a First Amendment claim for patronage-type dismissals. Myers, however, was not terminated because the officeholder changed; she was terminated for running against the newly-appointed officeholder.

The Court is bound by *Carver* to the extent that the facts here are virtually indistinguishable from that case. The issue here is whether Myers, as a government employee who sought to displace her supervisor by becoming a candidate for his position, has the right to continued employment with the incumbent-opponent after the election. The *Elrod v. Burns*, 427 U.S. 347 (1976)(plurality) and *Branti v. Finkel*, 445 U.S. 507 (1980) line of cases, cited here by Plaintiff, limits the right of a governmental employer to terminate or condition employment because of an individual's political beliefs and affiliations.[1] The *Carver* court considered and rejected the application of this line of cases. Myers's discharge implicates none of the concerns raised by *Elrod* or *Branti* since her discharge was not related to patronage.

---

[1] In *Elrod*, the Court held, in sum, that "patronage dismissals severely restrict political belief and association." 427 U.S. at 372. *Branti* further refined the issue, but rejected the suggestion that *Elrod* applies only to "dismissals resulting from an employee's failure to capitulate to political coercion." 445 U.S. at 516. Instead, *Branti* held that a plaintiff need only prove that he or she was discharged "solely for the reason that they were not affiliated with or sponsored by" a political party. *Id.* at 517.

*Carver* binds this Court in its determination that Myers, as an unclassified civil servant, has no constitutional right to run against her employer and retain her employment. Because Myers has not demonstrated that her termination violates the First Amendment, her claim under Section 1983 fails. Whether the decision to terminate Plaintiff was bad public policy or otherwise noxious is not a question for this Court to decide. Defendants are therefore entitled to summary judgment on this claim.

**B.     Fourteenth Amendment Claim**

Plaintiff also raises a claim under Section 1983 for a violation of her rights under the Fourteenth Amendment due process clause. Plaintiff Myers claims that Defendants denied her the right to procedural due process when Dean and the County terminated her employment without notice, hearing or other procedural protections. To succeed, Plaintiff first must prove that she had a protected property interest in continued employment. *See Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 565 (6th Cir. 2004).

"[A] property interest exists and its boundaries are defined by 'rules and understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 141 (6th Cir.1997) (quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). Thus, Myers must prove that there are rules or mutually explicit understandings that support her claim of entitlement to the benefit of employment. *See Perry v. Sindermann*, 408 U.S. 593, 601 (1972). More specifically, to establish a protected interest in her continued employment, Myers must identify a state statutory or contractual right that was violated by her termination.

Myers can point to no statutory basis for her alleged right to a pre-termination hearing. The Supreme Court has recognized that a *classified* civil servant has a property interest in continued employment that cannot be deprived without adequate due process procedures. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985). Indeed, the Ohio Revised Code creates a legitimate property interest in continued employment for a classified civil servant in that the statute provides that a classified employee may only be terminated for cause. Ohio Revised Code § 124.34.

By contrast, however, the Ohio Revised Code creates no similar property interest for unclassified employees. Unlike classified civil servants, "unclassified civil servants have no property right to continued employment." *Christophel v. Kukulinsky*, 61 F.3d 479, 482 (6th Cir. 1995) (citing *Vodila v. Clelland*, 836 F.2d 231, 232 (6th Cir. 1987)). Under Ohio law, an unclassified employee is an "at-will" employee subject to discharge for any reason. *Lawrence v. Edwin Shaw Hosp.*, 57 Ohio App. 3d 93, 566 N.E.2d 1256 (Ohio App. 1988). As a deputy clerk for Pickaway County, Plaintiff Myers was employed in unclassified civil service. Ohio Rev. Code Ann. § 124.11(A)(10). She signed a sworn statement acknowledging that she was an unclassified employee. Thus, Myers's discharge without a pre-termination hearing did not infringe on any property interest created by Ohio law. Myers's unclassified employee status precludes a procedural due process claim based on a statutory right to continued employment.

Similarly, Myers has no contractual right to continued employment. Myers concedes that the employee handbook at issue in this case in and of itself did not create an implied contract or a reasonable expectation of continued employment. The Pickaway County Personnel Policy and Procedure Manual contains an express disclaimer that it is "not an employment contract, express

-9-

or implied." Pickaway County Personnel Policy and Procedure Manual § 1.1. The manual repeatedly states that it is not intended to limit the statutory right of the Appointing Authority to terminate the employment of an unclassified civil servant. *See id.* §§ 1.1, 1.7(B), 6.2(B), 6.2.

Instead, Myers contends that Dean adopted but failed to follow the pre-disciplinary hearing procedures set forth in the Manual and thus denied Myers procedural due process of law. The parties do not dispute that Myers was terminated without a hearing. In effect, Myers contends that the Pickaway County Personnel Policy and Procedure Manual created an implied contract or an expectation that she would receive a hearing prior to termination. She contends that her protected property interest was created by mutual understandings between herself and the County. *See Perry*, 408 U.S. at 601 (noting property interest may arise by virtue of mutual understandings between the parties). Thus, if Myers and the County had a mutual understanding that she had a right to continue working as a deputy clerk absent a pre-termination hearing, then she was deprived of procedural due process when her employment was terminated without a hearing.

Myers points to the language in the manual referring to the County's progressive disciplinary procedures. In particular, Myers relies on Section 6.2 which provides as follows: "Pickaway County appointing Authorities and supervisors shall follow an established system of progressive discipline when correcting job behavior." (Dean's Depo., Exh. 1, § 6.2(A), p. 1.) Section 6.2 also provides, however, that "[t]he County has adopted this discipline policy as a guideline for the uniform administration of discipline. It is not, however, to be construed as a delegation of or a limitation upon, the statutory rights of the Appointing Authority as set forth in the Ohio Revised Code, or when circumstances warrant." (*Id.*, Section 6.2(B).) The Manual also

-10-

refers to predisciplinary procedures:

> Whenever the employer or his designee determines that an employee may be disciplined for cause (including all suspensions, reductions, or terminations), the employee will be notified of the allegations and supporting evidence and a predisciplinary conference will be scheduled to give the employee an opportunity to offer an explanation of the alleged conduct.

(*Id.*, Section 6.4.) The Manual also requires that all allegations be reduced to writing in sufficient detail and provided to the employee as notice, and further describes the appeal rights of a disciplined employee.

Plaintiff relies on *Gratsch v. Hamilton County*, 12 Fed. Appx. 193, 2001 WL 406440 (6th Cir. April 3, 2001)(unreported) as support for her conclusion that her former employer violated her Due Process rights by terminating her employment without notice and a hearing. In *Gratsch*, a terminated special deputy sheriff brought a Section 1983 action against various persons in the county sheriff's department. After the district court denied the defendants' motions for summary judgment on ground of qualified immunity, defendants filed an interlocutory appeal. The Court of Appeals held, that, because a protected property interest could be created by mutual understandings, a fact issue existed as to whether the county sheriff had violated the deputy's procedural due process rights by terminating him without hearing. The record contained ample evidence tending to show the sheriff's department had an actual practice of granting pre-discipline hearings to the special deputies. The court also noted that a provision in the county "Rules, Regulations, and Disciplinary Process Manual," which provided for pre-discipline hearings, applied to special deputies. *Id.* at *12-*13.

By contrast, here, Plaintiff Myers has come forth with no evidence, besides a bare recitation of the provisions in the manual, to support her claim that the parties had a mutual

understanding that she would receive a hearing prior to her termination. Contrary to *Gratsch*, Myers has no evidence that other deputy clerks received procedural due process or that the county clerk's office had an actual practice of providing such notice and hearings. In fact, Myers has not adduced evidence that she herself believed that she was entitled to a hearing prior to her termination. Myers testified that she understood, prior to her termination, that she was not working under a civil service regime. (Myers's Depo., at 37.)

Instead, the policy manual at issue here did not obligate Dean to take any particular action before terminating the employment of one if his employees. The Manual and its disciplinary policy were adopted as "guidelines" but could not be "construed as a . . . limitation upon the statutory rights of the Appointing Authority, or when circumstances warrant." (Section 6.2(B).) Further, the manual contains an express disclaimer: "[t]his manual is not an employment contract, expressed or implied. . . . To the extent the Employer is not prohibited from doing so by law, the Employer retains the right to hire, discharge, set compensation, and manage unclassified employees without restriction[.]" (*Id.* at § 1.1.)

The Manual does not alter Myers's status as an unclassified at-will employee who may, under Ohio law, be discharged without cause or a pre-termination hearing. *See Wagner v. Celebrezze*, 1998 WL 833708 (6th Cir. Nov. 20, 1998)(unreported)(holding that unclassified state court bailiff had no statutory or contractual right to continued employment because, *inter alia*, plaintiff presented no evidence of any "meeting of the minds" that would transform an employee handbook into an implied contract; plaintiff not required to sign any statement that he agreed to follow the rules set forth in handbook and appointing authority retained the right unilaterally to amend the handbook).

Accordingly, Myers lacked any protected property interest in her continued employment as a deputy clerk. Defendants are therefore entitled to summary judgment on Plaintiff's Fourteenth Amendment claim.

### IV.

Because this Court has found that summary judgment is warranted as to all claims arising under federal law, and in the absence of diversity jurisdiction, the Court declines to exercise its supplemental jurisdiction over Plaintiff's state law claims. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966). Plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE**.

### V.

For the foregoing reasons, the Motion for Summary Judgment filed by Defendants James Dean and the Pickaway County Board of Commissioners (Doc. #16) is **GRANTED**. The Clerk is directed to remove this matter from the Court's pending motions and cases list.

**IT IS SO ORDERED.**

3-16-2006
**DATED**

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE